419 A.2d 753

COMMONWEALTH of Pennsylvania

v.

John W. BORECKY, Appellant.

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed May 2, 1980.

Frank R. Cori, Assistant Public Defender, Pottsville, for appellant.

Richard B. Russell, District Attorney, Pottsville, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant was convicted by a judge sitting without a jury of possession of a controlled substance.[1] Post–verdict motions were denied and appellant was placed on probation for twelve months. This appeal followed.

The record discloses that on September 15, 1977, Trooper Stanley M. Leganza of the Pennsylvania State Police applied for and obtained a warrant authorizing a search of the premises occupied by appellant and another individual. Ap-

---

1. Appellant was found not guilty on a charge of possession with intent to deliver.

pellant contends[2] that the fruits of the search should be suppressed on the grounds that Trooper Leganza's affidavit in support of probable cause was based upon information derived from a prior illegal search. We are constrained to agree.

The affidavit in support of probable cause recited in pertinent part:

The affiant was in contact with a confidential informant who stated during the week of September 10th he learned two individuals who lived at R.D. # 1 Box 70 Auburn, Pa. in a grey farm house were in possession of quantities of marihuana. The affiant deems the informant reliable for the following reason. During the first week in September 1977 (between 10 September 1977 and 13 September 1977 at approximately 1500 hours) the informant personally entered the above dwelling house and observed in the attic, drying marihuana. The affiant personally searched the informant prior to entering the premises.

The informant returned to the affiant a quantity of the drying plant taken from the attic of the premises. The affiant conducted a field test of the plant and determined it to be marihuana. The affiant [sic] further stated the premises was occupied by Mryl H. Burkett. The marihuana obtained from the informant is personally in the hands of the affiant.

On 15 September 1977, the affiant conducted investigation and determined that the premises in question was owned by Edward REILLY, Pottsville, Pa. The owner was contacted and related he rented to John W. BORECKY and Mryl H. BURKETT the farm house and three outbuildings on the property in question.

On 15 September 1977 at approximately 1200 hours surveillance was conducted by Trooper R. P. HABER-

---

2. Appellant further maintains that the affidavit of probable cause fails to satisfy the two–pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In view of our disposition, we need not reach this issue.

STROH, Pa. State Police Vice Unit from a surveillance helicopter. The description of the premises obtained by the informant proved correct. The 2 and 1/2 story grey farm house on a property which contains a barn and two other outbuildings.

As previously noted, appellant's challenge to the search warrant is premised on the contention that the information in support of probable cause was obtained as the result of a prior unlawful search. More specifically, it is asserted that the affidavit indicates that the informant, with the prior knowledge and concurrence of the affiant, surreptitiously entered the subject premises and secured a sample of the controlled substance. While the affidavit itself does not clearly support appellant's argument in all of its particulars, our review of the record confirms that the informant did in fact conduct a search of appellant's premises with police knowledge and consent.

At trial,[3] on cross–examination, Trooper Leganza (the affiant) denied having a conversation with the informant to the effect that the informant enter the subject premises and conduct a search and seizure of anything suspicious. (NT. 16). However, the trooper did concede that he had prior knowledge that the informant was going to enter the farm house and that he searched him before he entered. (NT. 17). On further cross–examination, the following testimony was elicited regarding Trooper Leganza's dealings with the informant:

Q. The person with whom you were working, you had conversation with him concerning the return of a sample of some substance from the premises, is that correct?

A. That's correct.

. . . . .

**3.** While the record suggests that testimony was taken prior to trial relative to the suppression motion, the certified record transmitted to this Court does not contain any notes of testimony specifically adduced at a suppression hearing. However, the lower court extended broad latitude to the parties at trial and, accordingly, portions of the trial testimony bear directly upon the issue *sub judice.*

Q. You had arranged with the confidential informant to meet him at a predesignated spot after he entered the premises?

A. That's correct.

Q. And at that time you had planned, this is prior to his entry into the premises, you had planned that he would turn over to you whatever substances he may have obtained while on this premises?

A. Right. The original information was that there was possibly marijuana there.

Q. From this person?

A. Right.

Q. And, in fact, you searched this person before he entered the premises?

A. Yes.

Q. And after he entered the premises he returned directly to you?

A. Yes.

Q. And you were stationed about two–tenths of a mile away while this search was being conducted by the confidential informant, is that correct?

A. I was in the Port Clinton area along Route 61, that's correct.

(NT. 18–20).

In view of the foregoing testimony, it is apparent that the informant did indeed conduct a search of appellant's residence, rather than engage in a controlled purchase;[4] and that the police were aware of and acquiesced in the search.[5] Moreover, any remaining doubt on this score is dispelled by the order of the lower court denying appellant's application to suppress. That order states in relevant part:

4. Cf. *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976).

5. Nor is there any contention by the Commonwealth that appellant had granted the informant permissible access to the contraband.

"[U]pon review of the testimony produced and upon review of the affidavit filed in connection with the application for a search warrant, the Court finds that while *the search was done with police knowledge and consent,* there is nothing in the affidavit to indicate that the search was initiated by the police or the police induced the informant to make the search. We, therefore, dismiss the application for suppression." (Emphasis added.)

Given that the informant conducted a search and seizure in which the police were involved to a certain degree, the question becomes whether these circumstances render the informant's warrantless search subject to the proscriptions of the Fourth Amendment. It is firmly established that the Fourth Amendment's prohibition against illegal search and seizures applies only to the actions of governmental authorities and is inapplicable to the conduct of private parties. *See, e. g., Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Commonwealth v. Dembo,* 451 Pa. 1, 301 A.2d 689 (1973). However, it is equally well–settled that the evidence gathered through a search by a private individual must come to the state upon a "silver platter" and not as a result of any instigation by state authorities or participation by them in the illegal activities. *Byars v. United States,* 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520 (1927). The critical factor, as the United States Supreme Court has stated, "is whether [the private individual] in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state . . ." *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971).

Recently, the Pennsylvania Supreme Court in the case of *Commonwealth v. Eshelman,* 477 Pa. 93, 383 A.2d 838 (1973),[6] had occasion to express its view on this thorny area. In *Eshelman,* the Court held that where an off–duty auxiliary policeman retrieved a closed package containing marijuana from an old automobile located on the property of the

---

6. Reversing the decision of this Court in *Commonwealth v. Eshelman,* 236 Pa.Super. 223, 345 A.2d 286 (1975).

defendant's grandmother, and gave the package to his police chief who in turn arranged for the auxiliary officer to deliver the package to the state police for further analysis of its contents, the off–duty auxiliary officer must be deemed a police officer when he conducted the search and seizure and, therefore, the Fourth Amendment required suppression. In reaching this conclusion our Supreme Court reviewed and cited decisions from the United States Supreme Court and several of our sister states. Most importantly, the Court quoted the following pertinent passage from Mr. Justice Frankfurter's plurality opinion in *Lustig v. United States*, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949):

> "[t]he decisive factor . . . is the actuality of a share by a federal official in the *total enterprise* of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. *So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it."*

*Commonwealth v. Eshelman*, 477 Pa. at 100, 383 A.2d at 841. *See also, Commonwealth v. Dembo*, 451 Pa. at 11, 301 A.2d 689. Based upon, *inter alia*, the above–quoted analysis employed in *Lustig*, the court in *Eshelman* concluded that the action of the police chief in receiving the seized package from auxiliary officer constituted ratification of the off–duty auxiliary officer's unauthorized conduct of the Commonwealth.

Application of the principles discussed in *Eshelman*, leads us to conclude that the warrantless search and seizure engaged in by the informant in the case at bar must be deemed imputable to the police. To reiterate, it appears that Trooper Leganza was in contact with the informant for a period of time prior to the search; and, although it might not be inferred that Trooper Leganza either explicitly or implicitly instructed the informant to search appellant's residence for evidence, it cannot be gainsaid that the warrantless search was conducted with the prior knowledge and

concurrence of the trooper. Indeed, Leganza candidly admitted discussing with the informant the securing of a sample of the marijuana from appellant's residence; and that he, the trooper, searched the informant prior to his surreptitious entry and waited nearby while the search was being conducted. Under these circumstances, we share the sentiments of the Superior Court of Connecticut which, in a similar case, cogently observed:

> "[I]t is clear that the state police could not accept the cocaine delivered by the informer in this case with the knowledge that it had been stolen and, at the same time, disown responsibility for his acts. In so doing they ratified his unlawful acts and, under well–established principles of the law of agency, they assumed responsibility for them to the same extent as if they themselves had made the seizure."

*State v. Anonymous*, 34 Conn.Sup. 104, 379 A.2d 946, 947 (1977–78).[7] *See also, State v. Bohannon*, 3 Kan.App.2d 448, 596 P.2d 190 (Kan.App.1979); *State v. Boynton*, 58 Hawaii 530, 574 P.2d 1330 (Hawaii 1978).

In short, we hold that notwithstanding the lower court's finding that the police neither initiated the search nor instructed the informant to conduct a search, the state trooper's admitted prior knowledge of the warrantless search, and acquiescence therein, was sufficient to constitute ratification of the informant's illegal activity on behalf of the Commonwealth. Accordingly, the informant's search must be deemed a governmental search for purposes of the Fourth Amendment and its attendant exclusionary rules. Therefore, since the sample contraband unlawfully seized by the informant obviously supplied the foundation upon which the subsequent search warrant was obtained, all of the evidence seized pursuant to the warrant must be suppressed as the "fruit of the poisonous tree." *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *Wong Sun v. United States*, 371 U.S. 471, 83

---

7. Parenthetically, we note that this Connecticut decision was cited by our Supreme Court in *Commonwealth v. Eshelman*, supra.

S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Dembo,* supra; *State v. Anonymous,* supra.

Judgment of sentence reversed and a new trial granted.

WATKINS, J., files a dissenting opinion.

WATKINS, Judge, dissenting:

Because there is no evidence indicating that the police initiated the search nor directed the informant to conduct the search which formed the basis for the search warrant, I would hold that the search warrant was properly issued and that the fruits thereof were properly admitted at the defendant's trial. Therefore, I would affirm the court below.