COMMONWEALTH OF
PENNSYLVANIA,
Appellee,

v.

Douglas Paul SCHWENK, Appellant.

Superior Court of Pennsylvania.

Argued March 27, 2001.
Filed May 23, 2001.

Samuel C. Stretton, West Chester, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Doylestown, for Commonwealth.

Before STEVENS, MUSMANNO and TAMILIA, JJ.

MUSMANNO, J.

¶ 1 Douglas Schwenk ("Schwenk") appeals from the judgment of sentence im-

posed after he was convicted of aggravated assault and resisting arrest.[1] We affirm.

¶ 2 The trial court set forth the facts of the case as follows:

On March 31, 1999, Steven Groman had been a Pennsylvania State Trooper for about seven years. At about 10:00 p.m. that day, he was off-duty and at home with his family when his wife came inside after walking the dog. She told him that from across the street she heard a door slam, the sound of glass breaking and her neighbor, Mrs. Langley, yell, "No, stop it." She went on to state to Groman that she saw Mrs. Langley slam the front door and an unknown man kicking in the glass on Langley's side dining room window. Trooper Groman told her to call 911 and he left to go to Mrs. Langley's aid. He was dressed in jeans and sweats. He had his handcuffs with him and he was carrying his I.D. in his wallet.

Upon arriving at the Langley residence, he observed broken glass on the porch and a hole in the dining room window. He banged on the door and saw Mrs. Langley coming down the stairs, visibly upset. Langley called his name and asked for his help, unlocking and opening the front door. He told her to leave but she said the children are upstairs, and she ascended the steps. While standing in the foyer, Groman observed [Schwenk], whom he had never seen before, walking from the back room towards him. [Schwenk] said, "Who the fuck are you?" Groman replied, he was a "Pennsylvania State Trooper." [Schwenk] responded, "I don't give a fuck who you are." Suddenly, [Schwenk] came forward and swung at Groman with a closed fist, grazing his nose. Groman then told [Schwenk] he was "under arrest."

Groman encouraged [Schwenk] to sit down. [Schwenk's] reply was a stream of profanities. Then Groman took out his cuffs, displayed them to [Schwenk] and told [Schwenk] "he didn't want to have to use them." Next, [Schwenk] charged Groman, putting his shoulder into Groman's chest and stomach area, and drove him into a wall. [Schwenk] then forced Groman down the hallway and again drove him into another wall, twisting Groman's knee. [Schwenk] was striking Groman in the kidney area. Throughout this time, Groman was giving [Schwenk] verbal commands to stop, to let go. In response, [Schwenk] kicked Groman in the face, knocking him through the front door and onto the porch. [Schwenk] then stood in the doorway and said, "Big tough state trooper, I just kicked your ass." He then said, "Fuck this, I won," and he turned to go into the house. At that point, Groman grabbed him and pulled him back onto the porch. A neighbor arrived and he and Groman held [Schwenk] down as two uniformed local police officers arrived. [Schwenk] resisted their efforts to handcuff him and kept up the profanities.

The 911 tape accepted into evidence contained Langley's voice, stating [Schwenk] was drunk and "going ballistic."

Mrs. Langley's testimony corroborated Groman's testimony to the above. In addition, she testified [Schwenk] shoved her into the house and pulled the phone from her when she tried to call 911. She testified she heard Groman announce himself as a "state trooper."

In the emergency ward, Groman was treated for lacerations and abrasions. Later, he was treated by an oral sur-

---

1. *See* 18 Pa.C.S.A. §§ 2702(a)(2), 5104.

geon .... He was also treated by an orthopedic surgeon for a swollen and painful knee .... Groman used crutches until mid-May, 1999, while taking anti-inflammatory medication and undergoing physical therapy. He also wore a leg brace and had surgery scheduled for December 1999.

A neurologist treated [Groman] for severe headaches. A chiropractor treated him [from] April to October 1999. He was out of work until June 1999.

Trial Court Opinion, 10/10/00, at 2–5.

¶ 3 Schwenk was charged with aggravated assault and resisting arrest, in addition to other charges. After a jury trial, he was found guilty of aggravated assault and resisting arrest. On January 14, 2000, the trial court sentenced Schwenk to a prison term of three and one-half to seven years on the charge of aggravated assault, and to a consecutive term of twenty-three months of probation on the charge of resisting arrest. Schwenk filed post-sentence Motions, which the trial court denied on October 11, 2000. On November 3, 2000, Schwenk filed this timely appeal.

¶ 4 Schwenk raises the following issues on appeal: (1) whether Groman was acting as a Pennsylvania state trooper in the course of his duties at the time of the incident, since he was not on duty, was in civilian clothes, and came to the aid of a neighbor; (2) whether the evidence was insufficient to support the verdict and the verdict was against the weight of the evidence; (3) was the issue of whether Groman was acting as a state trooper a question of law and thus, did the trial judge err in submitting this issue to the jury; (4) whether the trial court erred in not allowing Schwenk to present character testimony on the character traits of truthfulness and honesty since Schwenk testified at trial and those character traits were at issue; and (5) whether trial counsel was ineffec-

tive for not requesting that closing arguments be transcribed, because improper comments were made by the prosecutor.

■ ¶ 5 Schwenk first contends that the trial court erred in concluding that Groman was acting within the scope of his police duties at the time of the incident. Schwenk argues that Groman was not acting in the performance of his duties, and therefore, the evidence did not support the convictions of aggravated assault and resisting arrest.

¶ 6 Schwenk's argument challenges the sufficiency of the evidence underlying the verdict. When addressing such a claim, we must determine whether, viewing all of the evidence admitted at trial and all reasonable inferences therefrom in a light most favorable to the Commonwealth as the verdict winner, the trier of fact could conclude that all of the elements of the offense were established beyond a reasonable doubt. *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871 (1998).

¶ 7 Schwenk was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(2). Under that statute, a person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to [a police officer], while in the performance of duty ...." *Id.* Schwenk was also convicted of violating 18 Pa.C.S.A. § 5104, "Resisting arrest or other law enforcement." A person will be guilty of violating section 5104 if, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." *Id.* Each offense requires that a police officer be acting while in the performance

of his duties at the time that the offense was committed.

▇ ¶ 8 Under the law of this Commonwealth, members of the Pennsylvania state police are authorized to:

make arrests, without warrant, for all violations of the law, including laws regulating the use of the highways, which they may witness .... They shall have all the powers and prerogatives conferred by law upon members of the police force of cities of the first class, and upon constables of the Commonwealth.

71 P.S. § 252(a).[2] The fact that a state police officer is off-duty does not mean that the trooper's power to conduct official police business automatically ceases. *Commonwealth v. Hurst*, 367 Pa.Super. 214, 532 A.2d 865 (1987).

¶ 9 In *Hurst*, the defendant was charged with, and found guilty of, reckless driving, a summary offense. *See* 75 Pa.C.S.A. § 3714. At the time that the offense occurred, the state trooper was off-duty, and was on the way home from work. *Hurst*, 532 A.2d at 868. A panel of this Court, relying on *Commonwealth v. Eshelman*, 477 Pa. 93, 383 A.2d 838 (1978), held that the trooper, who was within his jurisdiction, in uniform, and conducted himself in an official manner, was acting as a police officer when he stopped the defendant on the highway. *Hurst*, 532 A.2d at 869. The Court held that "the fact that the officer was off-duty does not mean that the trooper's power to conduct official police business automatically ceased." *Id.*

▇ ¶ 10 In *Eshelman*, a non-uniformed, off-duty police officer discovered several packages containing marijuana in an old car belonging to the defendant. The officer was outside of his jurisdiction

at the time. The Pennsylvania Supreme Court held that although the officer was without authority to do so, he was acting as a police officer, based on his training and experience, and on his intent to turn over the packages to his superior on the police force for investigation, when he removed the packages. 477 Pa. at 101, 383 A.2d at 842. Thus, under the holding of *Eshelman*, a police officer may act in the performance of his duties even if he is not in uniform, and is not officially "on-duty" at the time of an arrest.

¶ 11 In addition, according to the Pennsylvania Rules of Criminal Procedure, a police officer may make an arrest without a warrant "when the offense is a felony or misdemeanor committed in the presence of the police officer making the arrest." Pa. R.Crim.P. 502. The offenses of which Schwenk was convicted, aggravated assault under 18 Pa.C.S.A. § 2702(a)(2), and resisting arrest, 18 Pa.C.S.A. § 5104, were a felony and a misdemeanor, respectively. The offenses were clearly committed in Groman's presence. Thus, Groman had the authority to attempt to make a warrantless arrest of Schwenk.

¶ 12 Schwenk has cited several cases in support of his argument that Groman was not acting as a state trooper at the time of the incident. We find those cases distinguishable. In *Commonwealth v. Stahl*, 296 Pa.Super. 507, 442 A.2d 1166 (1982), an off-duty, non-uniformed police officer claimed that he was making a citizen's arrest for the summary offense of disorderly conduct. A plurality of a panel of this Court (two judges concurring in the result) found that the arrest was not valid because the officer, since he was off-duty, was not acting within the scope of his

---

**2.** A more specific statute, *i.e.*, section 6304 of the Motor Vehicle Code, 75 Pa.C.S.A. § 6304, requires a state trooper to be in uniform when

making an arrest for a violation under that title.

employment under the relevant Rule of Criminal Procedure. *Id.* at 1170. The plurality decision in *Stahl* also indicated that the officer's claim that he was making a citizen's arrest was not valid because a citizen is not permitted to make an arrest for a summary offense. *Id.*

¶ 13 In the present case, Schwenk was charged with felony, misdemeanor, and summary offenses, and Groman did not claim that he made a citizen's arrest; thus, this case is distinguishable from *Stahl.* In addition, because *Stahl* was a plurality decision, it is not precedential authority for this Court.

¶ 14 In *Commonwealth v. Kiner,* 697 A.2d 262 (Pa.Super.1997), the offense involved was a violation of the Motor Vehicle Code, under which a police officer is required to be in uniform in order to effectuate an arrest. The officer, a state trooper who was off-duty and not in uniform, arrested the defendant for driving under the influence.[3] A panel of this Court held that the arrest was invalid because the officer was not in uniform, as required under the Motor Vehicle Code. *Id.* at 267; *see* 75 Pa.C.S.A. § 6304. The present case is distinguishable from *Kiner* because no Motor Vehicle Code violations were involved.

¶ 15 In *Commonwealth v. Brandt,* 456 Pa.Super. 717, 691 A.2d 934 (1997), a Pittsburgh Housing Authority police officer arrested the defendant for driving under the influence and for drug charges, outside of the officer's jurisdiction. The trial court suppressed evidence pertinent to the prosecution, and on appeal, this Court affirmed, on the basis that the officer was acting beyond his jurisdictional authority. *Id.* at 939. This case is not applicable to the case at issue because, in the present case, Groman was acting within his jurisdiction.

¶ 16 In this case, evidence was presented at trial that Groman was a Pennsylvania state trooper, that he identified himself to Schwenk as a state trooper, that Groman told Schwenk that he was "under arrest," that Groman displayed his state police handcuffs to Schwenk and told him that he did not want to use them. Throughout the struggle with Schwenk, Groman attempted to get Schwenk to "calm down" until the municipal police arrived. Unable to get Schwenk to cease his struggle with Groman, Groman attempted to do "everything [he] could" to restrain Schwenk. *See* N.T., 10/26/99, at 40–46. Eventually, Groman was able to restrain Schwenk, and Groman directed a bystander to place his handcuffs on Schwenk. *Id.* at 55.

¶ 17 We conclude that the evidence was more than sufficient to establish that Groman was acting in the performance of his duties as a state police officer, despite the fact that Groman was not in uniform, and was off-duty. The evidence therefore was sufficient to sustain the convictions in this respect.

 ¶ 18 Schwenk additionally contends that the evidence was insufficient to support the verdict of resisting arrest, because he did not create a substantial risk of bodily injury to a public servant or anyone else, or employ means requiring substantial force to overcome the resistance. The evidence, viewed in the light most favorable to the Commonwealth, showed that Schwenk maintained a continuous assault against Groman, after Groman had said he was a state trooper and had told Schwenk that he was under arrest. Schwenk's actions not only created a substantial risk of bodily injury to Groman, but in fact caused him serious bodily injury. Further, the evidence established that Schwenk struggled and resisted the

---

**3.** *See* 75 Pa.C.S.A. §§ 3731(a)(2), -(a)(4).

attempts of the two local police officers to place him in handcuffs, and that the officers were required to use force to subdue Schwenk. We conclude that the evidence was sufficient to sustain the conviction of resisting arrest.

¶ 19 Schwenk also contends that the verdicts were against the weight of the evidence. A motion for a new trial based on a claim that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Gibson*, 553 Pa. 648, 720 A.2d 473 (1998). Appellate review is a review of the trial court's exercise of its discretion, not of the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 663–64, 720 A.2d at 480. In the exercise of its discretion, the trial court may award a new trial on the basis that the verdict is against the weight of the evidence if the verdict is so contrary to the evidence as to shock one's sense of justice. *Id.* at 664, 720 A.2d at 480.

¶ 20 The trial court determined that the verdict was not against the weight of the evidence. *See* Trial Court Opinion, 10/10/00, at 7. Although the trial court did not elaborate on its reasons, we conclude that the trial court did not abuse its discretion in that determination. In light of the evidence presented at trial, which was more than sufficient to sustain the verdicts, the verdicts clearly were not "shocking to one's sense of justice."

¶ 21 Schwenk next argues that the trial judge erred in submitting to the jury the issue of whether Groman was acting in the performance of his duties. Schwenk contends that the issue of whether Groman was acting in the performance of his duties was a matter of law, which should not have been submitted to the jury. We disagree.

¶ 22 When reviewing a challenge to a jury instruction, we will reverse only

for an abuse of discretion or an inaccurate statement of the law. *Commonwealth v. Myers*, 722 A.2d 1074, 1076 (Pa.Super.1998). The appellate court must review the charge as a whole to determine if it is fair and complete. *Id.*

¶ 23 We have reviewed the entire charge to the jury. *See* N.T., 10/28/99, at 3–43. In that charge, the trial court gave the following instructions, to which Schwenk objects on appeal:[4]

I've been requested to instruct you that the trooper was not acting in the performance of his duties since he was off duty, and I decline to give that instruction because I've indicated to you that the law of Pennsylvania is that an off-duty police officer is entitled to, has the legal right to arrest another for crimes committed in his presence. I've indicated to you that state police have state-wide jurisdiction.

But I leave for your consideration— when you take the wife walking the dog, what she saw and heard, what she related to her husband—what his employment was. He had the handcuffs. He had the identification. He ran across the street. He knew of a history of Kim's former husband beating her up and he believed that's what was going on. He had information that the window was kicked out and the man climbed through the window. He identified himself.

Everybody agrees he's a state police officer. I'm leaving for you and your determination as to whether or not he was in the performance of his duties at the time and place in question. That's for your determination.

*Id.* at 28–29.

¶ 24 Our review of the contested instruction reveals that the trial court did not

---

4. Schwenk also objected to this instruction at trial. *Id.* at 33.

abuse its discretion or inaccurately state the law. As we have previously discussed, a state police officer may be acting in the performance of his duties when he is off-duty and not in uniform. *See Eshelman,* 477 Pa. at 101, 383 A.2d at 842; *see also* Pa.R.Crim.P. 502. Under the facts of this case, the trial court could have determined, as a matter of law, that Groman was acting in the performance of his duties at the time of the incident. *See* N.T., 10/26/99, at 40–46. The fact that the trial court left this determination to the jury, rather than making that determination as a matter of law, did not prejudice Schwenk, but rather, benefitted him. By leaving the determination to the jury, the trial court gave Schwenk the opportunity for the jury to determine that Groman was not acting in the performance of his duties at the time of the incident. We conclude that the instruction to which Schwenk objects is not reversible error.

 ¶ 25 Schwenk next argues that the trial court erred in precluding him from presenting character testimony as to the traits of truthfulness and honesty. Schwenk asserts that he should have been allowed to present such testimony because he testified at trial, and therefore, his credibility was at issue. The admission of evidence is within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Lilliock,* 740 A.2d 237 (Pa.Super.1999). Evidence of a witness's character for truthfulness is admissible only after the witness's character for truthfulness "has been attacked by reputation evidence or otherwise." Pa.R.E. 608(a)(2). Evidence that is not relevant is not admissible. Pa.R.E. 402.

¶ 26 In the present case, the trial court excluded the proffered evidence as to Schwenk's reputation for truthfulness and honesty on the basis that those character traits were not relevant to the charges against him, *i.e.,* aggravated assault and resisting arrest. We agree that the traits of truthfulness and honesty are not relevant to the offenses of aggravated assault and resisting arrest, and therefore, we conclude that the trial court did not err in disallowing that evidence.

 ¶ 27 Further, we cannot agree with Schwenk's contention that the character evidence should have been admitted to bolster his credibility. Evidence of a witness's character for truthfulness or honesty is not admissible to bolster the witness's credibility unless the witness's truthfulness and honesty have first been attacked. *Commonwealth v. Gwynn,* 555 Pa. 86, 103, 723 A.2d 143, 151 (1998). "If a witness is impeached by proof of bad reputation for truth and veracity, evidence may then be admitted to prove good reputation for truth and veracity." *Commonwealth v. Fowler,* 434 Pa.Super. 148, 642 A.2d 517, 517 (1994) (citation omitted). Where the witness's adversary merely introduces evidence denying the facts to which the witness testified, the courts in Pennsylvania do not permit evidence of a witness's good reputation for truth and honesty. *Id.* at 518–19. Additionally, such evidence has not been allowed in response to a severe cross-examination of the witness. *Id.* at 519.

¶ 28 In this case, counsel for the Commonwealth did not conduct a severe or blistering cross-examination of Schwenk. Our review of Schwenk's testimony on cross-examination indicates that, in fact, the cross-examination of him was rather mild. Thus, the only "attack" on Schwenk's testimony was the testimony of Groman and other witnesses, which simply presented conflicting facts as to what occurred during the incident in question. Under these circumstances, we conclude

that the trial court did not abuse its discretion in precluding Schwenk from offering character testimony to bolster his credibility.

¶ 29 Schwenk's last argument is that his trial counsel was ineffective for failing to request that the closing arguments of counsel be transcribed. Schwenk also asserts that the trial court erred in failing to order that the closing arguments be transcribed. Schwenk's present counsel argues that Schwenk told him that the prosecutor made improper remarks during closing, including remarks that Schwenk is violent, and that he beat his girlfriend and terrorized her children. Schwenk contends that, because of the absence of a transcript, he has been denied meaningful appellate review, and thus, he is entitled to a new trial or arrest of judgment.

¶ 30 Counsel will be found to be ineffective where (1) there is arguable merit to the underlying claim; (2) the course chosen by counsel does not have a reasonable strategic basis; and (3) the error of counsel prejudiced the petitioner, *i.e.*, there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999).

¶ 31 In *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), the Pennsylvania Supreme Court held that a bald assertion that there may have been improper questions on cross-examination of a witness, where the transcript of that testimony was missing, was insufficient to sustain Albrecht's argument that due process was violated by the trial court's failure to provide him with the transcript, and insufficient to raise any inference of prejudice from counsel's failure to pursue that issue. *Id.* at 47–48, 720 A.2d at 701–02.[5]

¶ 32 In *Commonwealth v. Johnson*, 312 Pa.Super. 484, 459 A.2d 5 (1983), Johnson argued, similar to Schwenk, that his prior counsel were ineffective for failing to request recording of the opening and closing arguments. Johnson asserted that, absent such a record, potential issues, such as prosecutorial misconduct, were unavailable for appeal. *Id.* at 10. This Court held that, unless the defendant alleges prejudice resulting from the failure to assert a particular trial error that occurred during opening or closing arguments, we will not reverse the conviction. *Id.* at 12. "Mere conjecture will not advance [the defendant's] position." *Id.* at 13.

¶ 33 In the present case, Schwenk has set forth only the potential of error in the prosecutor's closing argument. In addition, at a hearing on Schwenk's post-sentence motions, Schwenk's trial counsel testified that he did not recall anything in the prosecutor's closing remarks that required objection. *See* N.T., 7/28/00, at 15. Under these circumstances, we conclude that Schwenk's claim of ineffective assistance of counsel fails.

¶ 34 Judgment of sentence affirmed.

---

5. In *Commonwealth v. Brown*, 496 Pa. 86, 436 A.2d 165 (1981), the defendant was awarded a new trial where he submitted specific evidence of what the prosecutor had said during closing argument, and the court found those statements prejudicial. The closing argument in *Brown* was not recorded. *Cf. Common-* *wealth v. Shields*, 477 Pa. 105, 383 A.2d 844 (1978) (holding that defendant had been denied his right to an effective appeal where the tapes of the prosecutor's closing argument were lost, even though the defendant had not specifically described the allegedly prejudicial remarks).