COMMONWEALTH of Pennsylvania,
Appellee,

v.

Joseph Bradley RATHFON,
Appellant (Two Cases).

Superior Court of Pennsylvania.

Argued Sept. 10, 1997.
Filed Dec. 8, 1997.

John F. Marshall, Clarion, for appellant.

George R. Kepple, Dist. Atty., Kittanning, for the Com., appellee.

Before POPOVICH, SAYLOR and OLSZEWSKI, JJ.

POPOVICH, Judge:

This case involves appellant Joseph Bradley Rathfon's convictions in two separate cases. In both cases, Rathfon filed a motion to suppress evidence seized by police from his home. The trial court denied both motions. On appeal, he contends that this was error. We affirm.

On December 8, 1992, Officer Lou Weiers of the Bureau of Alcohol, Tobacco and Firearms, met with Yvonne Summerville, appellant's paramour. During this meeting, Summerville informed the officer that she had observed drugs and drug paraphernalia in Rathfon's home. Based on the information provided, the officer obtained a search warrant for the home. On December 23, 1992, the search warrant was executed. The search revealed 318.2 grams of marijuana, cocaine residue, drug paraphernalia and tools used for growing and processing marijuana. Consequently, an arrest warrant was issued for Rathfon.

Before the arrest warrant was executed by police, Summerville informed Pennsylvania State Police Trooper Dennis Martinez that Rathfon was continuing to grow marijuana at his home. On June 14, 1993, Trooper Martinez, who was accompanied by other state troopers, traveled to Rathfon's home to execute the arrest warrant. Trooper Martinez detained Rathfon while another officer walked the perimeter of the residence for safety reasons. The second officer discovered six potted marijuana plants along a fence in Rathfon's yard. Subsequently, following Rathfon's arrest, Trooper Martinez applied for, and was granted, a second search warrant for Rathfon's residence. The second search of Rathfon's home revealed thirty-one marijuana plants, various drug paraphernalia and several marijuana growing tools.

Based upon the December 23, 1992, search, Rathfon was charged at indictment number 425 CR 93 with unlawful manufac-

turing of marijuana, possession with intent to deliver marijuana, possession with intent to use drug paraphernalia, possession of cocaine and two counts of possession of marijuana. Rathfon filed an Omnibus Pre–Trial Motion alleging that Summerville had been coerced into acting as a government agent and then entered his residence without permission when she gathered the information that provided the basis for the search warrant executed on December 23, 1992. Following a hearing, the motion was denied.

Based upon the June 14, 1993, search, Rathfon was charged at information number 550 CR 1993 with possession with the intent to deliver marijuana, possession with the intent to manufacture marijuana, possession of marijuana and possession of drug paraphernalia. Rathfon also filed an Omnibus Pre–Trial Motion at 550 CR 1993. Following a hearing, the motion was denied.

On May 6, 1994, Rathfon was found guilty of all charges at 425 CR 1993, with the exception of the charges for possession of cocaine and possession with intent to deliver marijuana. On May 19, 1994, Rathfon was found guilty of all charges at 550 CR 1993. He was then sentenced by the lower court.

■ Rathfon filed two notices of appeal to this Court. We dismissed both appeals because he failed to file appellate briefs. Subsequently, Rathfon filed a petition for Post–Conviction Relief regarding both judgments of sentence. In his petition, Rathfon alleged that a new trial was warranted and that he should be permitted to file a direct appeal *nunc pro tunc*. By order dated November 7, 1996, the PCRA court granted Rathfon's petition to file an appeal *nunc pro tunc*. However, the PCRA court failed to address Rathfon's issues directed at securing a new trial. On December 4, 1996, Rathfon filed notices of appeal in both 425 CR 1993

and 550 CR 1993. These notices were defective because Rathfon appealed the order entered on November 7, 1996, instead of the judgments of sentence entered on June 8, 1994. Rathfon corrected this oversight on December 16 and 17, 1996, by filing amended notices of appeal.[1]

■ On appeal, Rathfon's sole argument is that all of the evidence seized at his residence on December 23, 1992, and June 14, 1993, should have been suppressed because Summerville, who acted as a government agent, illegally entered his home to gather the information upon which the searches of his residence were based. In bringing this claim, Rathfon challenges the propriety of the trial court's February 22, 1994, order, which denied his suppression motion in 550 CR 1993, and the May 4, 1994, order, which denied his suppression motion in 425 CR 1993. In reviewing appellant's claim, we will determine whether the record supports the trial court's factual findings and whether the trial court's legal conclusions drawn from the facts are free of error. *Commonwealth v. Medley*, 531 Pa. 279, 612 A.2d 430 (1992).

■ The Fourth Amendment of the United States Constitution protects people from unreasonable governmental intrusions into their legitimate expectations of privacy.[2] *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619 (1994). "The protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Commonwealth v. Brundidge*, 533 Pa. 167, 620 A.2d 1115, 1118 (1993). "An expectation of privacy is present when an individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that

1. Despite Rathfon's filing of the amended notices of appeal, the PCRA court entered an order on February 24, 1997, denying the issues remaining in *Rathfon's PCRA petition*. We find that this order was improper. It is well-settled that once a notice of appeal has been filed, a trial court is divested of jurisdiction to act further on the case. *Commonwealth v. Pearson*, 454 Pa.Super. 313, 685 A.2d 551, 557 (1996). As such, the February 24, 1997, order must be deemed a nullity. *Id.*

It should be noted that on January 28, 1997, this Court *sua sponte* consolidated the appeals of the cases listed at 425 CR 1993 and 550 CR 1993.

2. Appellant has not alleged that Article I, Section 8 of the Pennsylvania Constitution has been violated. Accordingly, we shall discuss Rathfon's suppression issues under the United States Constitution only.

... subjective expectation is one that society is prepared to recognize as reasonable." *Commonwealth v. Oglialoro,* 525 Pa. 250, 579 A.2d 1288, 1290 (1990) (quotation omitted). The determination of whether an individual's subjective expectation of privacy will be recognized as legitimate depends upon the totality of the circumstances and ultimately rests upon a balancing of the societal interests involved. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

 Generally, residential settings are the areas which are given the greatest protection by the Fourth Amendment. Absent exigent circumstances, the police may not search a residence without a warrant. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (citation omitted). "The purpose of the [Supreme Court's] decision[s] [is] not to protect the person of the suspect but to protect his home from entry in the absence of a magistrate's finding of probable cause." *Minnesota v. Olson,* 495 U.S. 91, 95, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85, 92 (1990). However,:

> It is firmly established that the Fourth Amendment's prohibition against search and seizures applies only to the actions of governmental authorities and is inapplicable to the conduct of private parties. [I]t is ... well-settled that the evidence gathered through a search by a private individual must come to the state upon a "silver platter" and not as the result of any instigation by state authorities or participation by them in the illegal activities. The critical factor, as the United States Supreme Court has stated, "is whether [the private individual] in light of all of the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state...."

*Commonwealth v. Borecky,* 277 Pa.Super. 244, 419 A.2d 753, 755–56 (1980) (citations and quotations omitted).

 In the case *sub judice,* we find that Summerville was acting as a government agent when she provided information to the police which resulted in appellant's convictions. Our Supreme Court has stated that in order to determine whether one has acted as an agent of the government,

> [t]he decisive factor ... is actuality of a share by a [governmental] official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined it while it was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it.

*Commonwealth v. Eshelman,* 477 Pa. 93, 383 A.2d 838, 841 (1978) (quotation omitted).

 Here, Officer Weiers testified that when he met with Summerville in December, 1992, he "asked [her] to go in [Rathfon's residence] and to just report back ... what she saw." N.T. 5/4/94 p. 5. This admission, from a government official, went uncontradicted. While Officer Weiers also testified that he specifically instructed Summerville not to enter the residence without Rathfon's permission, this qualification does nothing to diminish Summerville's role as a government agent. While the government may not have directed the means utilized by Summerville, the fact remains that she was pursuing the ends which the government had sought. Officer Weiers set in motion Summerville's search of Rathfon's residence which led to the police officers' seizure of evidence supporting Rathfon's judgements of sentence. Accordingly, we have no doubt that Summerville was acting as a government agent at the time she searched Rathfon's residence in December, 1992, and in June, 1993. *See Borecky, supra.*

 However, while Summerville may have been acting as a government agent, the question still remains whether she entered Rathfon's premises with his permission. "[I]n order to have a reasonable expectation of privacy, one must intend to exclude others and must exhibit that intent." *Commonwealth v. Lowery,* 305 Pa.Super. 66, 451 A.2d 245, 247 (1982). With regard to this issue, the trial court concluded the following:

> I find without hesitation that the woman was lawfully on the premises. There is no expectation of privacy against a person to whom you have had this—had three children with, with whom you have lived for

six and a half years. It would be asinine for me to find that there is an expectation of privacy.... This is a chance that people take when people come into their house. If you invite a police officer to a party and he sees what you don't want him to see that's your tough luck. And certainly inviting a woman into the house, if she were a licensed officer and she were there under these circumstances, that is a chance you take, you have no expectation of privacy. It's nothing at all like sending someone down there surreptitiously and breaking into the house.

N.T. 2/22/94 p. 50.

We find that the record supports the trial court's findings of fact. Evidence was introduced which established that Summerville had given birth to three of Rathfon's children, she had lived at Rathfon's house for a period of time, she had been asked by Rathfon to come to his house to baby-sit and when she visited the home she was never prohibited from entering certain areas. In light of the abundance of evidence concerning Summerville's unrestrained access to Rathfon's home, we find that Rathfon had no legitimate expectation of privacy specific to Summerville entering his home. *See Lowery, supra.* Accordingly, the trial court did not err in denying appellant's suppression motions, and, therefore, we affirm his judgements of sentence.[3]

Judgments of sentence docketed at 425 CR 1993 and 550 CR 1993 are affirmed.

---

**3.** In its opinion for the case docketed at 425 CR 1993, the trial court failed to address specifically whether Summerville had permission to enter Rathfon's residence when she gathered information in December, 1992. However, the trial court made the necessary findings of fact and conclusions of law with regard thereto in its opinion for the case docketed at 550 CR 1993. While we acknowledge that the trial court erred in failing to address the issue in the 425 CR 1993 case, we find that it would be a waste of judicial resources to remand this case. Accordingly, we addressed the merits of both appeals.