J-S96020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| BRIAN TIMOTHY MCMULLEN | |
| Appellant | No. 645 WDA 2016 |

Appeal from the PCRA Order April 5, 2016
In the Court of Common Pleas of Potter County
Criminal Division at No(s):
CP-53-CR-0000097-2013

BEFORE:  BENDER, P.J.E., BOWES, J., AND SOLANO, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 15, 2017**

Brian Timothy McMullen appeals from the April 5, 2016 order denying him PCRA relief.  We affirm.

On May 16, 2013, Appellant was charged with child endangerment, corruption of a minor, and two counts of indecent assault.  On May 16, 2013, officials from Oswayo Valley High School contacted Pennsylvania State Trooper Glenn C. Drake and asked him to come to school to meet with Appellant's son, I.M.  I.M. had located a suicide note in Appellant's dresser drawer.  Appellant's son spoke with his minister about the note, and the minister contacted school personnel, who, in turn, called police.  I.M. was willing to meet with Trooper Drake due to his concern for his father.  I.M.

told Trooper Drake that the note indicated that Appellant was suicidal because Appellant was in love with his fifteen year old niece, V.K.O., and had an inappropriate relationship with her. At Trooper Drake's request, I.M. retrieved the suicide note. The document confirmed that Appellant was in love with his niece and, in it, Appellant "gave specific details of events and touching that constituted Indecent Assault." Affidavit of Probable Cause, 5/16/13, at 1.

Trooper Drake met with V.K.O. that day, and she "related that [Appellant] did touch her inappropriately on several occasions" by touching her vaginal area over her pants." *Id*. In addition, while they were in the swimming pool, Appellant grabbed her several times and pressed his groin against her buttocks. V.K.O. also informed Trooper Drake that Appellant had told her that he was in love with her and that he wrote her sexually explicit love letters. Appellant bought the victim a vibrator, which she refused to accept.

Trooper Drake brought Appellant to the police barracks that evening and administered *Miranda* warnings to him. Appellant "expressed remorse and embarrassment. He indicated that his feeling and behavior with VKO was inappropriate." *Id*. Appellant also admitted that he committed the sexual contact described by the victim and that he was sexually aroused by it. This conduct occurred when V.K.O. was between thirteen and fifteen years old and Appellant was aged fifty-two to fifty-four.

On February 25, 2014, Appellant pled guilty to child endangerment graded as a third-degree felony and indecent assault graded as a second-degree misdemeanor. There was no agreement as to the length of sentence but there was a binding sentencing recommendation that Appellant would serve his term in the local county facility. On June 10, 2014, Appellant was sentenced to eighteen to forty-eight months imprisonment, to be served in Potter County Jail, followed by two years probation. Appellant filed a timely motion to modify his sentence, which was denied on August 25, 2014. Appellant did not file a direct appeal from the judgment of sentence.

On August 19, 2015, Appellant filed a timely, counseled PCRA petition. The PCRA court conducted a hearing and denied relief. This appeal followed. Appellant raises these issues for our review:

> I. Whether the PCRA court erred when it determined that trial counsel was not ineffective for failing to litigate a motion to suppress physical evidence?
>
> II. Whether the PCRA court erred when it determined that [Appellant's] guilty plea was not unlawfully induced as a result of counsel's ineffectiveness by failing to advise him and pursue a motion to suppress?
>
> III. Whether the PCRA court erred when it determined that [Appellant's] guilty plea was not unlawfully induced by trial counsel's ineffectiveness by providing [deficient] advice regarding his true sentencing exposure?

Appellant's brief at 4.

Initially, we note that this Court reviews the "denial of PCRA relief to determine whether the findings of the PCRA court are supported by the

record and free of legal error." **Commonwealth v. Roane**, 142 A.3d 79, 86 (Pa. Super. 2016) (quoting **Commonwealth v. Treiber,** 121 A.3d 435, 444 (Pa. 2015)). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. We will not disturb the PCRA court's findings unless the record fails to support those findings." **Commonwealth v. Patterson**, 143 A.3d 394, 397 (Pa.Super. 2016) (citation omitted).

Appellant's first two assertions are related. He asserts that plea counsel should have filed a motion to suppress and that counsel's failure in this respect led to Appellant's entry of an unknowing and involuntary guilty plea. The following uncontested facts are pertinent. On May 16, 2013, Appellant's son, I.M., discovered a suicide note written by Appellant in Appellant's sock drawer. I.M. told his minister who contacted school officials. They called the police. I.M. voluntarily met with the school personnel and Trooper Drake because he was worried about Appellant's well being. When Trooper Drake arrived at the school to interview I.M., the boy told him what the document said, but the letter was not in I.M.'s possession. Trooper Drake asked I.M. to obtained the note, and I.M. complied with that request.

Appellant avers that plea counsel should have moved to suppress the note and evidence obtained from its discovery on the ground that I.M. was acting as an agent or instrument of police when he seized that document

- 4 -

without a warrant.   Appellant continues that counsel's failure to file what would have been a successful suppression motion caused his entry of an involuntary and unknowing guilty plea.   At the PCRA hearing, plea counsel testified that he did not file a suppression motion because he did not believe it would have been successful.   The PCRA court concurred in this assessment.

In order to obtain relief based upon ineffective assistance of counsel, the defendant must demonstrate: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Patterson**, **supra** at 397-98.  "A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." **Id**. at 397 (citation omitted); **accord Commonwealth v. Fears**, 86 A.3d 795, 806–07 (Pa. 2014) (citation omitted) ("Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea.").  "The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." **Patterson**, **supra** at 397 (citation omitted).

We now ascertain whether plea counsel correctly concluded that a suppression motion would not have been granted. As noted by the United States Supreme Court in **Burdeau v. McDowell**, 256 U.S. 465 (1921), the Fourth Amendment's protection against unlawful searches and seizures applies only to actions by the government. "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority[.]" **Id**. at 475. If a search is conducted by a private citizen independently and without police involvement and if the individual offers the fruits of that search to governmental authorities, then the Fourth Amendment is inapplicable. **Id**. However, the individual must act completely of his own accord and without the participation of the prosecuting authorities; otherwise, Fourth Amendment protections will apply to the search. **See Byars v. United States**, 273 U.S. 28, 28–34, 47 S. Ct. 248, 248–50, 71 L. Ed. 520 (1927). The crucial determination to be made in ascertaining whether governmental action is involved in a search is whether the private citizen, "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state[.]" **Coolidge v. New Hampshire**, 403 U.S. 443, 487 (1971).

Appellant relies upon **Commonwealth v. Borecky**, 419 A.2d 753 (Pa.Super. 1980). Therein, police obtained a warrant to search the defendant's home based upon information supplied by a confidential informant ("CI"). We invalidated the warrant as it was issued based upon

facts derived from a prior, illegal search. The following facts informed our decision. The CI told police that marijuana could be found in the defendant's residence. The CI's reliability was established as follows. Acting at the direction of police, the CI entered the defendant's dwelling to search for marijuana and took a portion of that substance and gave it to authorities.

The ***Borecky*** Court concluded that the CI's surreptitious entry into the home and his seizure of marijuana without a warrant was unconstitutional as it was done "with the prior knowledge and concurrence of the" police. ***Id***. at 754. We found that the police participated in securing the incriminating evidence seized by the CI and disapproved of their collusion in what we characterized as an illegal activity, which was the unauthorized removal of an item from an individual's home. This Court held that police "ratified [the CI's] unlawful acts and, under well-established principles of the law of agency, they assumed responsibility for them to the same extent as if they themselves had made the seizure." ***Id***. at 756 (citation omitted). The CI's search was deemed a governmental search and ruled unconstitutional under the Fourth Amendment.

In the present case, the seizure of the letter was conducted by Appellant's son rather than a stranger, and a different set of principles are at play. I.M. testified at the PCRA hearing, and the court credited his testimony. Its factual findings in this regard are supported by the record and will be accepted by this Court. Specifically, I.M. lived with his parents

and freely entered and exited his parent's bedroom. In addition, the boy accessed his father's sock drawer on prior occasions and looked for socks. I.M. reported that Appellant was aware that I.M. entered the unlocked sock drawer, and I.M. believed that he had permission to access that drawer.

Thus, I.M. was not an outsider, such as the CI at issue in *Borecky*. To the contrary, I.M. lived with Appellant in the same home, freely entered Appellant's bedroom, and accessed the sock drawer with Appellant's knowledge. I.M. initially discovered the suicide note on his own and without any police involvement. Under these circumstances, we concur with the PCRA court's application of *Commonwealth v. Rathfon*, 705 A.2d 448 (Pa.Super. 1997). In that case, Rathfon litigated an unsuccessful suppression motion wherein he asserted that his paramour conducted an unconstitutional search of their residence while acting as a governmental instrument or agent. The girlfriend lived with Rathfon, and they had three children together. Federal authorities met with the paramour, and she told them that she had observed drugs in their home, which was owned by Rathfon. The federal agents obtained a search warrant based upon the paramour's information, discovering marijuana, cocaine residue, drug paraphernalia, and tools used for growing and processing marijuana.

Rathfon was arrested and released and continued to grow marijuana. The paramour once again reported his behavior to federal agents, who obtained another search warrant and found drugs and drug paraphernalia.

In seeking to suppress the evidence obtained with the search warrants, Rathfon claimed that his girlfriend acted as a government agent and entered his residence without permission when she gathered the information that provided the basis for the search warrants.

The **Rathfon** court noted that the Fourth Amendment is inapplicable to conduct by a private individual when the person acts without the participation of governmental officials. We found that the defendant's girlfriend had acted as a governmental agent since it was established that the federal authorities had participated in her search by asking her to look through the residence and report her observations to them. Nevertheless, this Court affirmed the denial of Appellant's suppression motion.

The **Rathfon** Court reasoned that, while the paramour "may have been acting as a government agent, the question still remains whether she entered Rathfon's premises with his permission. In order to have a reasonable expectation of privacy, one must intend to exclude others and must exhibit that intent." **Id**. at 452. This Court concluded that suppression was unwarranted given the proof that the paramour had free access to the home, holding "that Rathfon had no legitimate expectation of privacy specific to [his girlfriend] entering his home." **Id**. We relied upon the fact that she lived with Rathfon and had unfettered access to the home.

We more recently applied the **Rathfon** holding in **Commonwealth v. Stafford**, 749 A.2d 489 (Pa.Super. 2000). Joseph Walburn approached

police and reported that Appellant was importing marijuana seeds from a foreign county in order to grow that substance. After meeting with police several times, Walburn told them that he had observed growing marijuana plants. Police instructed Walburn to enter the defendant's home and to look for growing marijuana. Walburn complied with that directive, and, after entering Stafford's house, reported back that he saw about 160 live plants on the second floor of the premises.

The **Stafford** Court held that, while Walburn was acting as a governmental agent when he saw the plants, Stafford had no reasonable expectation of privacy as to Walburn. We observed that Stafford and Walburn had known each other for months and that the defendant had consented to Walburn's presence in his home. Accordingly, we opined, Stafford "did not have an expectation of privacy in what the informer [Walburn] observed." **Id**. at 498. This Court's holding was: "There is no dispute that [the defendant] willingly invited [Walburn] into his home. We hold that [the defendant] had no reasonable expectation of privacy in those areas that would be open to Mr. Walburn's plain view during his visits." **Id**. **see also Coolidge**, **supra** (suppression of clothing and guns given to police at police's request by defendant's wife not warranted under Fourth Amendment since wife gave police objects of her own accord).

We conclude that **Rathfon** and **Stafford** apply herein. I.M. had unfettered access to Appellant's bedroom and sock drawer. He found the

suicide note independent of any police involvement. When I.M. returned to retrieve it, he was not acting illegally since he had permission to be on the premises and enter the drawer. Thus, under the *Rathfon* and *Stafford* cases, Appellant did not have a reasonable expectation of privacy as to I.M. with respect to the sock drawer. Therefore, plea counsel did not act ineffectively in failing to move to suppress the note and the evidence recovered as a result of it. A suppression motion would not have been successful. Accordingly, Appellant's guilty plea was not induced by plea counsel's neglect in this respect, and his first two claims fail.

Appellant's final position is that he should be permitted to withdraw his guilty plea since plea counsel did not properly inform him about his sentencing exposure. The following law is pertinent. A maximum sentence of less than two years of prison must be served in county jail. 42 Pa.C.S. § 9762(b)(3)("Maximum terms of less than two years shall be committed to a county prison without the jurisdiction of the court."). If the maximum jail term is more than five years, it must be served in a state penitentiary. 42 Pa.C.S. § 9762(b)(1)("Maximum terms of five or more years shall be committed to the Department of Corrections for confinement."). There is an option available with respect to a maximum term of imprisonment of between two and five years:

> (2) Maximum terms of two years or more but less than five years shall be committed to the Department of Corrections for confinement, except upon a finding of all of the following:

(i) The chief administrator of the county prison, or the administrator's designee, has certified that the county prison is available for the commitment of persons sentenced to maximum terms of two or more years but less than five years.

(ii) The attorney for the Commonwealth has consented to the confinement of the person in the county prison.

(iii) The sentencing court has approved the confinement of the person in the county prison within the jurisdiction of the court.

42 Pa.C.S. § 9762(b)(2). Herein, as noted, there was a binding agreement that Appellant would serve his jail term in county prison, and he was sentenced to eighteen to forty-eight months in county jail pursuant to § 9762(b)(2).

We conclude that any improper advice purportedly given by plea counsel regarding Appellant's sentencing exposure was dispelled by the contents of the plea colloquy. The plea court plainly told Appellant that the child endangerment charge was graded as third-degree felony and that the "maximum penalty for Felony of the Third Degree is imprisonment up to 7 years and a fine of $15,000 or both." N.T. Plea, 2/25/14, at 5. Appellant indicated that he understood. The plea court then explicitly informed Appellant that he faced a two-year jail term for the indecent assault and that "the maximum term of imprisonment which you could be subject [to] under today's plea . . . would be 9 years[.]" *Id*. at 6. The court acknowledged that

it was bound to impose a county term but informed Appellant that it was within its discretion to impose "such sentence in the Court's discretion within the range that [a] county sentence could encompass." *Id*.

Thus, Appellant knew his maximum sentencing exposure and that he would serve his sentence in county jail. His sentence was less than the maximum sentence that Appellant was told could be imposed, and he was ordered to serve his term in county prison. Having been informed of the pertinent sentencing options and having been sentenced in accordance with the plea agreement, Appellant cannot establish that plea counsel's ineffectiveness about his potential sentence caused him to enter an unknowing and involuntary plea.

Appellant also notes that his sentence was within the aggravated range of the guidelines, and avers his plea was involuntary since plea counsel did not tell him that he faced an aggravated-range sentence. It is settled that "there is no legal requirement that a defendant be aware of the guideline ranges in order to enter a valid guilty plea. A defendant must be informed of the statutory maximum[.]" *Commonwealth v. Fowler*, 893 A.2d 758, 765 (Pa.Super. 2006). In the present matter, Appellant was told about the statutory maximum, and his plea is valid despite the fact that he was not informed about the sentencing guidelines and that he faced a sentence in the aggravated range. Hence, Appellant cannot withdraw his guilty plea based upon plea counsel's sentencing advice.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/15/2017