J-S10034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY CLAYTON CAPRIOTTI | : | |
| | : | |
| Appellant | : | No. 1287 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 1, 2020
In the Court of Common Pleas of Sullivan County Criminal Division at
No(s): CP-57-CR-0000021-2019

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                     **FILED AUGUST 27, 2021**

Zachary Clayton Capriotti (Capriotti) appeals from the judgment of sentence entered by the Court of Common Pleas of Sullivan County (trial court) after his jury conviction of one count of Possession of a Firearm Prohibited as a first degree felony, three counts of Possession of a Firearm Prohibited as a second degree felony, and one count each of misdemeanors, Endangering the Welfare of Children (EWOC), Possession of a Controlled Substance, Possession of Drug Paraphernalia and Marijuana-Small Amount.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a separate sentencing order at the above docket number for each count. Capriotti filed one notice of appeal, attaching each sentencing order. We conclude that this does not conflict with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), because the trial court docket reflects only one entry for the judgment of sentence.

On appeal, Capriotti challenges the denial of his motion to suppress, the admission of evidence and the sentence imposed. We vacate and remand.

We take the following facts and procedural history from the trial court's November 30, 2020 opinion and our independent review of the record.

**I.**

**A.**

On July 19, 2019, Capriotti was arrested and charged arising out of an incident occurring at a property owned by his parents, Enrico and Arlene Capriotti (Enrico and Arlene), containing a restaurant and upstairs apartment. The incident resulted in the seizure of firearms, drugs and paraphernalia. Capriotti filed a motion to suppress evidence in which he asserted that he had a proprietary possessory interest in the entire property, including the restaurant and apartment owned by his parents. Because his parents had no right to be on the property, he contended that they did not have the authority to allow the police to search protected areas of the building. He further alleged that his parents were trespassing on the date of the incident.

At the hearing on the motion to suppress, Enrico and Arlene, Pennsylvania State Trooper Curtin Benjamin, Martin Spotts and Catherine Vaughn testified. Capriotti did not testify on his own behalf.

**1.**

Arlene testified that in 2014, she and her husband allowed Capriotti to move into the upstairs apartment at the property after his release from prison so that he had a residence for parole purposes.[2] (**See** N.T. Hearing, 6/09/19, at 10). Enrico and Arlene had an oral agreement with Capriotti that, in return for being allowed to stay in the apartment, Capriotti would pay the mortgage and any bills associated with the premises and run the restaurant. In approximately September/October 2018, Capriotti began having problems paying the mortgage, and in November/December 2018, the insurance on the building was cancelled for nonpayment. Enrico and Arlene took over Capriotti's agreed payment obligations. The parties discussed that Capriotti would have to find another place to stay if he did not take care of his obligations and in November 2019, they decided to sell the premises, calling an auctioneer to make arrangements.

In February 2019, Enrico and Arlene took over running the restaurant and new locks were installed so Capriotti could no longer access the restaurant, although he had continued access to the upstairs apartment via back stairs so he could remove his belongings. (**See id.** at 17-19, 42). At that time, Enrico told Capriotti he had two weeks to move out and Capriotti told him that he had guns in the wall of the restaurant he would need to

---

[2] Capriotti was on parole for an October 5, 2006 conviction.

retrieve. (*See id.* at 20). Enrico believed that the guns were hidden in the restaurant kitchen wall that had recently been painted white, when previously it had been green like all the others. (*See id.* at 26).

On February 17, 2019, Capriotti came into the restaurant while Arlene was there. At that time, Capriotti's cousin, Caleb Stoner, was also visiting and staying with Capriotti in the apartment. Arlene saw Capriotti pull a pistol in a brown leather holster out of the kitchen area. He was acting irrational and swinging the pistol around. Arlene called 911. (*See id.* at 24). When state police troopers arrived, Capriotti was no longer holding the handgun and he left the premises after briefly speaking with them. Arlene testified that either she or Enrico told the state police troopers that Capriotti told them there were guns in the restaurant kitchen wall, and Enrico used a utility knife to cut into the wall while Trooper Curtis Benjamin was watching and discovered two rifles. (*See id.* at 26-27, 51-52). The state police troopers took possession of the firearms and left the premises.

Arlene stated that after the state police troopers left, she and Enrico were concerned that there were more guns on the premises and Enrico went into the apartment to search. When Enrico found two pistols and drugs on a ledge in the closet of her grandson's room, Enrico and Arlene called the state police troopers again and Trooper Curtis Benjamin came back and retrieved the contraband. (*See id.* at 56). Arlene identified one of the guns as the same one she had seen Capriotti waving around earlier. (*See id.* at 34, 59).

On February 22, 2019, Enrico and Arlene began formal eviction proceedings because they were concerned that if Capriotti was released from prison, he would "come back and destroy the place." (*Id.* at 59); (*see id.* at 43). There was no question in her mind that they had all agreed that Capriotti had to leave since he was not meeting his half of the deal.

**2.**

Consistent with Arlene, Trooper Benjamin testified that on February 17, 2019, he, Pennsylvania State Police Corporal Sadowski and Trooper Price were dispatched to the scene of the incident because of Arlene's 911 call. Outside the restaurant, he spoke to Capriotti, with whom he was familiar since Capriotti was on parole, and Capriotti told him that the parties were arguing about him taking items he claimed were his own. (*See id.* at 66). Inside the restaurant, Arlene told him that Capriotti had retrieved a gun from the kitchen and both Enrico and Arlene informed him that Capriotti had previously advised them that he had to take down the wall in the kitchen to retrieve guns.

Enrico told Trooper Benjamin that while cleaning the kitchen, he noticed that part of a wall had been painted white while the rest were green, so he suspected that is where the guns were hidden. At that point, Enrico "took it upon himself to cut open the wall with a utility knife," revealing two guns, which were later identified as a 10-gauge shotgun and an AK-47. (*Id.* at 68, 73). Trooper Benjamin did not direct him to cut the wall or assist him in doing so. (*See id.*). The state police trooper then pulled the guns from the wall by

"press[ing] into the drywall" because Enrico told him, "I don't care how they come out of the wall, I want them out[.]" (*Id.* at 69). He then called state parole, which issued a permanent detainer. Trooper Price and Corporal Sadowski then took Capriotti into custody. Trooper Benjamin conducted a safety sweep, "a brief walk-through of the premises to make sure there's no guns, drugs or anything of dangerous means lying out in the open" because there were children present. He did not locate any other guns. (*Id.* at 71, 81-82). He returned to the state police barracks with the shotgun and AK-47 to log them into evidence before receiving a call to return to the premises because Enrico had located two additional guns and what he believed to be drugs in the upstairs apartment.

Upon returning, Trooper Benjamin followed Enrico upstairs to the apartment and Enrico showed him where the items were in the closet. Trooper Benjamin had not told him to conduct the search. The state police trooper removed the items from inside the closet on a ledge, unloaded one pistol that he found was loaded, and took them downstairs to see if Arlene could identify them. He had not seen the pistol during the walk-through because it was not a search. Arlene identified one gun as the pistol she had seen Capriotti in possession of earlier in the day. Both she and Enrico confirmed that they did not own any of the discovered items. The drugs were later identified as methamphetamine and marijuana.

On February 19, 2019, Capriotti was charged with four counts of Felon not to Possess, one for each gun, one count each of Possession with Intent to Deliver, Possession of Marijuana, Possession of Paraphernalia and EWOC. Trooper Benjamin explained the EWOC charge was brought because Capriotti's minor son was on the premises, had free access to both the apartment and restaurant, and guns and drugs were found in his room inside his closet on the ledge. (*See id.* at 72).

**3.**

Martin Spotts, a restaurant patron and friend of Capriotti's, testified that on approximately February 15, 2019, he learned that the restaurant locks had been changed and Capriotti could not access the restaurant but could get into the apartment. He also stated that Capriotti's minor son was there at that time. Catherine Vaughn, a friend of Capriotti's and a restaurant customer, testified that Capriotti told her that he did not have guns, which she believed. After receiving briefs from the parties, the court denied the motion to suppress on June 27, 2019.

**B.**

Trial was scheduled to commence on June 29, 2020. Before it began, Capriotti objected to count two, Persons not to Possess a Firearm, being graded as a first-degree felony, where the Information failed to indicate the reason for the grading. The court permitted the Commonwealth to file a

Second[3] Amended Information to include the basis for the first-degree grading. The newly filed information added that the basis for the charge was the Smith & Wesson .22 caliber revolver with a brown leather holster.

At the two-day trial, the testimony was consistent with that offered at the hearing on the motion to suppress. Furthermore, pertinent to review, we add the following:

Multiple witnesses testified that Capriotti said he had guns in the wall of the restaurant. Capriotti had a continuing objection to the admission of these statements based on the *corpus delicti*[4] rule. (**See** N.T. Trial, 6/29-30/20, at 73, 96, 194). He maintained that the search of the premises was illegal and had the court granted the motion to suppress, the Commonwealth would not have been able to establish the *corpus delicti* so any statements made by Capriotti would be inadmissible.

During her testimony, Arlene clarified that the locks on the restaurant were changed on February 1st or 2nd, 2019, approximately two weeks before

---

[3] The Commonwealth had filed a First Amended Information on August 23, 2019, that changed the first count from felony one Possession with Intent to Deliver, 35 P.S. § 780-113(a)(30), to misdemeanor Possession of a Controlled Substance, 35 P.S. § 780-113(a)(16).

[4] "The *corpus delecti* [sic] rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delecti* [sic] is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone." **Commonwealth v. Dupre**, 866 A.2d 1089, 1097 (Pa. Super. 2005).

the February 17, 2019 incident. (***See id.*** at 37). She identified Capriotti's son as being 14 years old and testified he occupied the apartment every other weekend. (***See id.*** at 44). Trooper Benjamin added that in addition to the shotgun and AK-47 found behind the restaurant wall, there also was an AK-47 magazine. The evidence found in Capriotti's son's bedroom closet was identified as a Smith & Wesson .22 caliber revolver in a brown leather holster, a loaded Wesson 38 special revolver in a black nylon holster, two bags of methamphetamine, marijuana and two glass smoking pipes. Arlene identified the Smith & Wesson revolver in the brown leather holster as the firearm she had seen Capriotti holding earlier that day.

Kaleb Stoner, Capriotti's nephew, testified in pertinent part that he was familiar with the restaurant and that in early 2019, he noticed that a wall had been painted white, although the rest of the walls were green. He stated that he discussed this change with Capriotti, who told him that he had hidden weapons behind the wall. Eric Hill, an ex-friend of Capriotti's, testified that in October 2018, he took an AK-47, a couple of 22s and a few shotguns out of the wall of the restaurant and took them home at Capriotti's request because Capriotti thought his parole officer was going to be visiting. Hill stated that Capriotti retrieved a shotgun and the AK-47 from him and that he sold the rest of the firearms at L&R Gun Shop. On cross-examination, Hill stated that he had occasion to talk with Trooper Benjamin on February 27, 2019, because

he was arrested for a previous DUI and that he and Capriotti had a dispute about a car, which he got back after Capriotti was in jail.

At the conclusion of trial, a jury convicted Capriotti, and on September 1, 2020, with the benefit of a Pre-Sentence Investigative Report, the trial court sentenced him to an aggregate sentence of not less than 24½ nor more than 55 years' incarceration to be served consecutive to the 2006 sentence he was then serving. Because Capriotti was in prison prior to adjudication and sentencing on a parole detainer for his 2006 conviction, the court denied his request for time served. On September 9, 2020, Capriotti timely filed post-sentence motions that the trial court denied on September 16, 2020. Capriotti timely appealed. He has complied with Rule 1925. *See* Pa.R.A.P. 1925(b).

## II.

On appeal, Capriotti raises the following questions for our review:

I.    Whether the Suppression Court's failure to make Findings of Fact and Conclusions of Law when it denied [Capriotti's] Motion to Suppress requires remand[;]

II.    Whether the evidence seized by the police should have been suppressed as [Capriotti] had a right of privacy, police actually participated in the search and there were no exigent circumstances justifying the failure to obtain a search warrant[;]

III.    Whether the trial Court erred in admitting statements made by [Capriotti] when, had the evidence been suppressed, there would be no *corpus delecti*[;]

IV.    Whether the trial court abused its discretion in permitting the Commonwealth to amend the Information on day of trial[;]

V.    Whether the trial court erred in denying the demurrer to the charge of Endangering the Welfare of Children[;]

- 10 -

VI.    Whether the verdict of guilty on all counts was against the weight of the evidence[; and]

VII.    Whether [Capriotti] was entitled to credit for time served against the aggregated sentence[?]

(Capriotti's Brief, at 17-18).

**A.**

In his first issue, Capriotti maintains that because the court failed to make findings of fact and conclusions of law pursuant to Rule of Criminal Procedure 581(1) in its order denying his motion to suppress,[5] the case must be remanded to allow the court the opportunity to do so.  He maintains that the court's discussion of its denial of the motion to suppress in its opinion concerning the post-sentence motions does not cure this error because that opinion also failed to set forth specific findings of fact or conclusions of law.

Pursuant to Rule 581(l):

At the conclusion of the hearing [on the motion to suppress], the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

_____

[5] [W]hen an appellate court reviews the ruling of a suppression court, we consider only the evidence from the defendant's witnesses, together with the evidence of the prosecution that when read in the context of the entire record, remains uncontradicted.  We must "first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom." ***Commonwealth v. Rojas***, 875 A.2d 341, 346 (Pa. Super. 2005) (citations and footnote omitted).

Pa.R.Crim.P. 581(l).

> A specific and contemporaneous announcement of suppression findings of fact and conclusions of law serves at least two salutary purposes. First, it permits the losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling, particularly in cases of contested evidence. A defensible credibility-based decision may dissuade an appeal, whereas a purely legal ruling may make clear that further review is appropriated. Second, ... in cases where suppression is denied ... Rule 581(I) is essential to ensuring that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities.

*Commonwealth v. Milner*, 888 A.2d 680, 688-89 (Pa. 2005).

Here, after a hearing and the receipt of briefs, the trial court entered an order denying Capriotti's motion to suppress that did not contain findings of fact and conclusions of law. We agree with Capriotti that the court did not comply with the mandate of Rule 581(l). However, though the general remedy is to remand for compliance with Rule 581(l), we may consider the merits of an appeal if "a remand for compliance would not serve the interests of judicial economy or justice." *See id.* at 689; *Commonwealth v. Reppert*, 814 A.2d 1196, (Pa. Super. 2002) (*en banc*) (relying on findings set forth in Rule 1925(a) opinion).

Capriotti challenged the court's suppression decision in his post-sentence motions. The court's opinion in support of its denial of Capriotti's post-sentence motions sets forth the facts from the hearing and the law on which it relied to reach its decision to deny suppression. Because the purpose

to be served by Rule 581(l) had been met and remand of this matter for the court to comply with the mandate of Rule 581(l) would not serve the interests of judicial economy or justice, we decline to do so.

**B.**

In his second issue, Capriotti argues that the court erred in relying on *Commonwealth v. Borecky*, 419 A.2d 753 (Pa. 1980), to deny his motion to suppress because the police participated in the search that resulted in the seizure of the evidence. He also maintains that he had a right of privacy and there were no exigent circumstances to justify a warrantless search. (*See* Capriotti's Brief, at 30-34).

> The Fourth Amendment of the United States Constitution protects people from unreasonable governmental intrusions into their legitimate expectations of privacy. The protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. An expectation of privacy is present when an individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that ... subjective expectation is one that society is prepared to recognize as reasonable. The determination of whether an individual's subjective expectation of privacy will be recognized as legitimate depends upon the totality of the circumstances and ultimately rests upon a balancing of the societal interests involved.

*Commonwealth v. Rathfon*, 705 A.2d 448, 450–51 (Pa. Super. 1997) (citations, quotation marks and footnote omitted). "Generally, residential settings are the areas which are given the greatest protection by the Fourth Amendment. Absent exigent circumstances, the police may not search a residence without a warrant." *Id.* (citations omitted). However:

It is firmly established that the Fourth Amendment's prohibition against search and seizures applies only to the actions of governmental authorities and is inapplicable to the conduct of private parties. [I]t is ... well-settled that the evidence gathered through a search by a private individual must come to the state upon a "silver platter" and not as the result of any instigation by state authorities or participation by them in the illegal activities. The critical factor, as the United States Supreme Court has stated, "is whether [the private individual] in light of all of the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state…."

**Borecky**, **supra** at 755-56 (citations and quotation marks omitted).

In this case, the trial court found that Enrico and Arlene provided the evidence against Capriotti to police on a "silver platter' when they, "the property and business owners, on their own accord, discovered weapons and a magazine for an AK-47 in the wall of their restaurant. Although the Pennsylvania State Police were present when the discovery was made, [they] did not direct or order Enrico and Arlene Capriotti to cut the wall." (Trial Court Opinion, 11/30/20, at 5).

Capriotti argues that the Pennsylvania State Police participated in the search by escorting Enrico to the kitchen, watching him cut the hole and then retrieving the exposed firearms from the wall. Similarly, when the state police troopers were dispatched to the premises a second time due to Enrico's further discovery of weapons, Enrico led them to the upstairs apartment and to a closet shelf from which Trooper Benjamin retrieved two more firearms, drugs and paraphernalia.

Our independent review of the record reveals that the state police troopers were legally on the premises being dispatched there after Arlene's 911 call. When the state police troopers arrived, Enrico led Trooper Benjamin to the restaurant kitchen because Capriotti had told him that he had hidden guns in there and Enrico wanted them removed. Without any direction or assistance from the officers, he then "took it upon himself to cut open the wall with a utility knife," revealing guns that he said he wanted removed so Trooper Benjamin did so. Thereafter, Enrico reported that he had found more guns and other contraband in his grandson's bedroom's closet shelf. The troopers came to the property, Enrico led Trooper Benjamin upstairs and, at Enrico's direction, the trooper removed the guns and contraband.

Based on this testimony under the totality of the circumstances, we discern no abuse of discretion by the trial court in applying the silver platter doctrine. As acknowledged by the court, although the Pennsylvania State Police were on the scene when Enrico cut the hole in the wall, he "took it upon himself" without any direction from Trooper Benjamin to cut open the wall, thus revealing weapons in plain view. As for the evidence found in the upstairs bedroom, again, the trooper had not told him to search there and did not assist with the search, merely retrieving the weapons at Enrico's request upon arriving at the scene.

Based on the foregoing and in the totality of the circumstances, the trial court properly relied on ***Borecky*** and acted within its discretion to deny Capriotti's motion to suppress the evidence against him.[6]

**C.**

Capriotti next argues that if the court had granted his motion to suppress, there would be no *corpus delicti* to allow admission of statements that Capriotti said that he had guns hidden in the wall of the restaurant.[7] (***See***

_____

[6] Moreover, Capriotti has failed to establish that he had any privacy interest in the restaurant. He concedes that his parents, who owned the property, had changed the locks two weeks before the incident and he no longer was running the establishment. The troopers were lawfully on the premises where they had been dispatched due to the parents' 911 report of parolee, Capriotti, acting erratically and being in possession of a handgun at the restaurant. The only search conducted by the troopers was incident to arrest to ensure that there were no more guns or other dangerous items endangering the children on the property. Even assuming, *arguendo*, that Capriotti is correct that the court erroneously found that he had vacated the **apartment** prior to this incident, the search conducted in the apartment that resulted in the discovery of weapons was not done by the troopers, but by his parents. The Fourth Amendment's prohibition against search and seizures is inapplicable to them.

[7] The Commonwealth responds that the statements were the subject of a motion *in limine*. However, it appears that the motion *in limine* was brought by the Commonwealth regarding Capriotti's prison phone calls, and based on the motion, these recorded phone calls do not include Capriotti's statements to Enrico about guns being in the wall. (***See*** Commonwealth's Motion *in Limine* for Determination of Admissibility of Evidence Obtained by Prison Phone Records, 7/20/19, at 1-2).

Capriotti's Brief, at 35).[8, 9]   However, this argument is moot because we already found that the court properly denied the motion to suppress, making the question of whether the Commonwealth would have been able to establish the *corpus delicti* without the evidence of the guns and other contraband a purely hypothetical question that we will not entertain.  **See In re Cain**, 590 A.2d 291, 292 (Pa. 1991) ("It is a well-established principle of law that this Court will not decide moot questions.").

## D.

In his next issue, Capriotti claims that the court erred in permitting the Commonwealth to amend the Information on the day of trial to support the grading of count two, Person not to Possession a Firearm, as a first-degree felony.  (**See** Capriotti's Brief, at 35-36).  He maintains that he suffered prejudice by this last-minute amendment because the basis for the increased

---

[8] "[A]ppellate courts review a trial court's ruling on the admissibility of evidence for an abuse of discretion."  **Commonwealth v. Elliott**, 80 A.3d 415, 446 (Pa. 2013).

[9] Capriotti's five sentence "argument" on this issue violates Rule 2119 in that he fails to provide any pertinent law or discussion thereof in support of this claim.  (**See** Capriotti's Brief, at 35); **see also** Pa.R.A.P. 2119(a)-(c). Additionally, although he raised this issue at trial, he offered no legal authority and made no argument, merely putting his objection that the "admission cannot come in based on the *corpus delicti*" on the record.  (N.T. Trial, 6/29/20, at 73).  While it appears from the record that this might have been discussed more fully in chambers, any such discussion is not part of the record and, therefore, does not exist for purposes of our review.

- 17 -

grading was not previously known to him and he did not have ample time to prepare. (*See id.* at 36).

The criminal information "is a formal written statement charging the commission of an offense signed and presented to the court by the attorney for the Commonwealth after a defendant is held for court...." Pa.R.Crim.P. 103. The information apprises the defendant of the filed charges so he can prepare a defense. *See Commonwealth v. Sinclair*, 897 A.2d 1218, 1223 (Pa. Super. 2006). Pennsylvania Rule of Criminal Procedure 564 permits the amendment of the information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Sinclair, supra* at 1221 (citation omitted). When reviewing an information's amendment, we consider:

> [W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the

- 18 -

factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*In re D.G.*, 114 A.3d 1091, 1094–95 (Pa. Super. 2015) (citation omitted).

In count 2 of the original and first amended Informations, the Commonwealth charged Capriotti with Possession with Intent to Deliver methamphetamine as a felony of the first degree without identifying the firearm. (*See* Information, 4/05/19, at 1); (Amended Information, 8/23/19, at 1). In the second amended Information, the Commonwealth charged Capriotti with Possession with Intent to Deliver methamphetamine as a felony of the first degree and identified the firearm as a "Smith & Wesson .22 caliber Revolver with brown leather holster." (Second Amended Information, 6/25/20, at 1).

The addition of the Smith & Wesson firearm did not add a new set of events, and the elements of the crime are not materially different to have prejudiced Capriotti. At all times, Capriotti was aware of the nature of the firearms seized, including the Smith & Wesson revolver in the brown leather holster that Arlene identified as the pistol possessed by Capriotti when he was acting erratically earlier on the day of the incident. Further, he had been charged with Possession of a Firearm Prohibited as a felony of the first degree since the first Information's filing. Identifying the firearm in the second amended Information did not materially alter his defense. Accordingly, the

- 19 -

trial court did not err in allowing the amendment where Capriotti was not prejudiced by it. **See In re D.G.**, **supra** at 1095.

**E.**

Next, Capriotti challenges the sufficiency of the evidence to support his EWOC conviction.[10] He maintains that although the handguns (one of which was loaded), methamphetamine, marijuana and paraphernalia were kept on a shelf in the closet of the bedroom used by his 14 year old son, because they were not visible to Trooper Benjamin during the safety sweep[11] and they were allegedly out of the sight and purportedly out of the reach of his son (Capriotti provides no citation to the record to support this claim), he did not commit EWOC. (**See id.** at 37-38).

Section 4304 of the Pennsylvania Crimes Code provides, in pertinent part, that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a

_____

[10] In reviewing a sufficiency of the evidence claim, "[w]e must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." **Commonwealth v. N.M.C.**, 172 A.3d 1146, 1149 (Pa. Super. 2017) (citation omitted).

[11] The safety sweep argument is not availing because Trooper Benjamin testified that the safety sweep did not include opening closet doors or going into cupboards. (**See** N.T. Trial, at 127).

person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). Pursuant to Section 302(b)(2):

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

At trial, Trooper Benjamin testified that the guns, one of which was loaded, were located next to illegal drugs and paraphernalia. He stated that he was able to reach the items on the closet shelf in the bedroom used by Capriotti's 14 year old son. Based on this evidence, the jury could reasonably find that Capriotti knowingly violated his duty of care and protection by putting firearms and drugs in the closet of his son's bedroom. While Capriotti argues that because the guns and drugs were not visible or purportedly within the reach of his 14 year old son, he did not knowingly endanger the minor; the fact is, he knew that his son was 14 years old and, just as the trooper did, could have easily accessed this illegal contraband by reaching up to the shelf ledge or using a stool to do so even though he was purportedly not tall enough. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that it proved EWOC beyond a reasonable doubt where it was

sufficient to establish every element of the crime.  *See N.M.C.*, *supra* at 1149; *see also* 18 Pa.C.S. §§ 302(b)(2), 4304(a)(1).  This claim fails.

**F.**

In his next issue, Capriotti claims that the verdict was against the weight of the evidence on all counts.[12]  (*See* Capriotti's Brief, at 38-39).  Specifically, he avers that there was evidence that he was out of possession of the restaurant for two weeks prior to the incident; that Catherine Vaughn testified that nothing was different about the wall in the restaurant kitchen prior to him being locked out; that Caleb Stone, who had been convicted of drug possession,[13] had stayed in the bedroom where the handguns, drugs and paraphernalia were found; that his parents had a financial interest in having him incarcerated; and that Eric Hill had motivation to give false testimony

_____

[12] "A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court.  An appellate court, therefore, reviews the exercise of discretion, not the underlying question [of] whether the verdict is against the weight of the evidence.  The fact–finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice.  In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.  Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings."  *Commonwealth v. Wallace*, 244 A.3d 1261, 1276 (Pa. Super. 2021) (citation omitted).

[13] It is not clear from the record that Caleb Stoner was convicted of drug possession.

against Capriotti and that he had been convicted of a *crimen falsi*. (**See id.** at 38).

Other than listing the foregoing evidence and providing a boilerplate citation to the standard for weight of the evidence, Capriotti provides no legal citation or discussion thereof in his approximately one-page "argument" on this issue challenging all counts of his conviction. **See** Pa.R.A.P. 2119(a)-(c). We will not develop an argument for him. **See J.J. DeLuca Co., Inc. v. Toll Naval Assocs.**, 56 A.3d 402, 411 (Pa. Super. 2012). Therefore, this issue is waived.

Moreover, we briefly note that it was for the jury, as fact finder, to consider all evidence presented and make any credibility determinations. Capriotti is asking us to re-weigh the evidence, which we will not do. **See Commonwealth v. Williams**, 854 A.2d 440, 445 (Pa. 2004), *cert. denied*, 546 U.S. 440 (2005). We discern no palpable abuse of discretion by the trial court in denying Capriotti's motion for a new trial where the verdict is not shocking to the conscience. This argument, even if properly presented, would fail. **See Wallace**, **supra** at 1276.

**G.**

Capriotti next challenges his sentence as excessive, which is a challenge to the discretionary aspects of a sentence. (**See** Capriotti's Brief, at 39).

It is well-settled that "[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth**

***v. Derry***, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Rather,

before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Edwards***, 71 A.3d 323, 329-30 (Pa. Super. 2013)

(citation omitted).

Capriotti filed a timely notice of appeal, properly preserved his claim by

filing a post-sentence motion for reconsideration, and includes a concise

statement of the reasons relied upon for allowance of appeal under Pa.R.A.P.

2119(f). The only issue remaining then is whether Capriotti has raised a

substantial question that the sentence is not appropriate under the Sentencing

Code.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Ali***, 197 A.3d 742, 760 (Pa. Super. 2018) (internal

citations and quotations omitted).

The trial court sentenced Capriotti to a standard range sentence of not

less than 24½ nor more than 55 years' incarceration by running Capriotti's

drug-related convictions concurrently and all firearms and the EWOC count

- 24 -

consecutively. Capriotti's Rule 2119(f) statement makes no argument at all, but merely recites boilerplate sentencing law. (**See** Capriotti's Brief, at 28). Hence, his Rule 2119(f) statement fails to "raise[] a substantial question that the sentence is appropriate under the sentencing code." **Edwards**, **supra** at 330.

Moreover, even reviewing the claim raised in the argument section of his brief, he would not be entitled to relief. Capriotti's claim is that, although the court sentenced within the guidelines and ran all drug-related convictions concurrently, because it ran the firearm and EWOC convictions consecutively and sentenced him as a repeat violent offender based on his burglary convictions from years prior, his sentence was excessive. (**See id.** at 39).

"[A] defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence." **Commonwealth v. Dodge**, 77 A.3d 1263, 1270 (Pa. Super. 2013) (emphasis in original). "Where, as here, the sentencing court has the benefit of reviewing a pre-sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Rhoades**, 8 A.3d 912, 919 (Pa. Super. 2010) (internal quotation marks and citation omitted).

Here, the trial court had the benefit of reviewing "an extensive pre-sentence investigative report." (Trial Ct. Op., at 8). At the sentencing hearing, the court stated the following:

> Reasons for sentence, this sentence is within the standard range guidelines and there's no reason for the court to deviate from the same. [Capriotti] was on state parole at the time this offense. [He] has a prior significant record, and [he] has exhausted all county and state level … resources for rehabilitation.

(*See* N.T. Sentencing, 9/01/20, at 12-13; *see id.* at 14-21). Additionally, it explained that it was running the Possession of a Firearm convictions consecutively because they related to four different guns. (*See id.* at 14).

Based on the foregoing, Capriotti has failed to raise a substantial question where the court was informed by a pre-sentence investigative report and he has failed to establish that application of the consecutive standard guideline range sentences was clearly unreasonable. He is not entitled to relief on this issue.

## H.

Finally, Capriotti maintains that the trial court erred in failing to give him time served for time spent in confinement.[14] Section 9760 of the Sentencing Code provides, in pertinent part:

---

[14] "A claim asserting that the trial court failed to award credit for time served implicates the legality of the sentence." **Commonwealth v. Gibbs**, 181 A.3d 1165, 1166 (Pa. Super. 2018) (citation omitted). Issues relating to the legality of a sentence are questions of law, over which our standard of review is *de novo* and the scope of review is plenary. **See id**.

> After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:
>
> (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1). "The principle underlying section 9760 is that a defendant should be given credit for time spent in custody prior to sentencing for a particular offense." *Commonwealth v. Mann*, 957 A.2d 746, 749 (Pa. Super. 2008) (citation omitted).

> [A]ll time served by a parole violator while awaiting disposition on new charges **must** be credited to the original sentence if the inmate remains in custody solely on a Board detainer. If the inmate is incarcerated prior to disposition and has both a detainer and has failed for any reason to satisfy bail, the credit **must** be applied to the new sentence by the sentencing court.

*Gibbs*, *supra* at 1167 (citing *Mann*, *supra* at 751) (emphases in original).

The question in this case is not whether Capriotti will receive time for pre-trial confinement, but against which sentence it should be applied. In *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568 (Pa. 1980), our Supreme Court held that if a parolee is held in custody solely because of a warrant issued by the Board and has otherwise met the requirement for bail on new criminal charges, the parolee receives credit towards his original sentence for the time spent in custody. *Id.* If bail is not satisfied or is revoked, the parolee receives credit towards his new sentence

for the time spent in pre-trial custody. *Id.* If, however, the parolee is not convicted or sentenced for the new criminal charges, the pre-trial confinement must be applied to the parolee's original sentence. *Id.*; *see also McCloud v. Pennsylvania Board of Probation and Parole*, 834 A.2d 1210, 1212–13 (Pa. Cmwlth. 2003).[15]

In this case, the trial court ordered that Capriotti "shall not receive credit for prior confinement as he is currently detained on a state parole violation." (N.T. Sentencing, at 15); (*see id.* at 13-22). We are constrained to conclude this was error. Although Capriotti remained in prison prior to trial in this matter due to his state parole violation for the sentence he received in 2006, nothing in the record indicates that he made bail on the new charges. Accordingly, he should have received credit for time served in pre-trial custody against his new conviction and we vacate the judgment of sentence and remand for the court to grant Capriotti credit for time served on the charges in this matter.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge McLaughlin files a concurring/dissenting memorandum.

_____

[15] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *Commonwealth v. Fitzpatrick*, 159 A.3d 562, 571 n.7 (Pa. Super. 2017), *appeal denied*, 173 A.3d 255 (Pa. 2017) (citations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2021